JOHN R. ROBINSON & *al. versus* EZEKIEL W. BARKER & *al.*

By the use of the term "*accounts*" in the poor debtor act (Rev. St. c. 148, § 29,) the Legislature probably intended to describe such claims as the debtor might have against other persons which were the proper subjects of charge as book debts, and for the payment of which no written contract or security had been taken ; and by the use of the terms *notes, bonds* or *other contracts*, to include all other securities and evidences of debts due.

That could not properly be denominated an account, in the sense of the statute, upon which nothing was due, any more than that could be considered a note or bond, which might exist in that form, but had been previously paid.

When the debtor discloses accounts or claims to a considerable amount against other persons, and states that they have not been settled, that he does not know the amount of them, or of the counter claims against him, but that he thinks there is nothing due to him, he must have them appraised, in manner provided by law, or the proceedings will not be considered as evidence of the performance of the condition of the bond.

If the debtor was not legally entitled to take the poor debtor's oath within the time limited in the bond, and a suit is brought upon it, *testimony* is not admissible on the trial, to show that evidence might have been introduced which would have authorized the taking of the oath.

And if during the pendency of a suit upon the bond, there is another action against the debtor, alleging that he made wilfully false disclosures, it cannot affect the rights of the parties to the suit on the bond.

And where a law question, in a suit upon a poor debtor's bond, was pending at the time of the act of August 11, 1848, arising on a statement of facts agreed by the parties, the Court will give an opportunity, if the condition of the bond be forfeited, for the defendant to have an opportunity to have the damages estimated by a jury.

THIS case was submitted on a statement of facts, making

Robinson *v.* Barker.

the proceedings of the justices and the disclosures of Barker, the principal debtor, a part of the case.

In this statement it was agreed, that the testimony of John Glidden and of Sarah Small, tending to show that in fact nothing was due to them, respectively, from Barker at the time of his disclosures, should be taken and made a part of the case, if the same was admissible and material.

The material portions of the disclosures are given in the opinion of the Court.

*Hubbard*, in his argument for the plaintiffs, contended, that the disclosures, on their face, showed that the debtor had made a fraudulent disposal of his property; and that in such case, even if the oath be administered by the justices, it shall be void and of no effect.

The debtor disclosed accounts in his favor, and they should have been appraised as the statute requires. He says, he did not know, that any thing was due to him, but he also says, there had been no settlement, and that he did not know to the contrary. The counsel here went into a calculation, for the purpose of showing, that upon the disclosures, enough appeared to make it certain that on a fair settlement there would be a balance due to Barker from Mrs. Small.

The papers should show, that the justices were legally selected and were competent to sit, and the Court duly organized, or they could have no jurisdiction. The papers should show, that every thing required by law to be done, had been done.

*Ingalls*, for the defendants, said that the notices and selection of the justices appeared by the papers to have been perfect; and the argument on this point, would have been more properly addressed to the justices, who by statute are made the final judges of this, than to this Court.

Barker had never made any charges to Mrs. Small for his personal services, and none were ever intended to be made. A man is at perfect liberty, whether rich or poor, to perform such services gratuitously, or under the expectation of gaining

more than the value by a voluntary gift afterwards. Without
making Mrs. Small a debtor, where she never expected to be
and where Barker never supposed that she was, the balance is
in her favor.

The answers must be taken to be true until the contrary is
shown ; and by them nothing was due.

The statute could never have contemplated the appraise-
ment of the mere evidence of a demand which had been paid,
or where nothing was due.

The opinion of the Court, WELLS, J. having been of counsel
in the case, and taking no part in the decision, was drawn
up by

SHEPLEY J. — This suit is upon two bonds, made to liber-
ate the principal obligor from arrest on executions. The debt-
or made disclosures of the state of his affairs in performance
of the conditions of the bonds.

In the first disclosure made in performance of the condition
of the bond, bearing date on December 16, 1845, in answer
to the first interrogatory the debtor names several demands,
and says — " Hiscock & Metcalf also owed me on unsettled
account, the amount of which I am unable to state. All
these demands have long since been paid, except Hiscock and
Metcalf's which is still unsettled, but I do not think there is
any thing due, but think I owe them." " In 1845, I finished
a ship for Hiscock and Stetson, for which I received $950, I
think. I have not settled with them, but think there is noth-
ing due." In answer to the first and twenty-first interrogato-
ries, he states, that he, as agent for Mrs. Small, procured
materials and labor to build a house, that he had received money
from her for that purpose, and to purchase articles necessary
for his family during that year, to what amount he was unable
to say, and then says :—" I have occupied her house since the
same was built, and am now owing her I think." " For my
own services, I have had no settlement with Mrs. Small, and
have not made out my bill against her, as some of the bills are
not settled as above."

The statute, c. 148, § 29, provides, "whenever from the disclosure of any debtor arrested or imprisoned on any execution, it shall appear, that he possesses or has under his control any bank bills, notes, accounts, bonds, or other contracts," if the creditor and debtor cannot agree to apply the same in part or in full discharge of the debt, appraisers shall be appointed to set off such property, or enough of the same to satisfy the amount of the debt, costs and charges.

By the use of the term " accounts," the Legislature probably intended to describe such claims, as the debtor might have against other persons, which were the proper subjects of charge as book debts, and for the payment of which no written contract or security had been taken. And by the use of the terms notes, bonds, or other contracts, to include all other securities and evidences of debts due. That could not properly be denominated an account, in the sense of the statute, upon which nothing was due at the time of making the disclosure, any more than that could be considered a note or bond, which might exist in that form, but had been previously paid. When, however, the debtor discloses claims against other persons once justly due to him, and states, that they have not been settled or paid unless canceled by accounts or claims to be applied in off-set or discharge of them, they would seem, until the off-set or discharge has been made, to be accounts in common parlance, and in the sense in which that word is used in the statute, unless it should also appear, that upon an adjustment, nothing could be due or recoverable upon them. Provision is made by the forty-seventh and forty-eighth sections of the statute, that if the debtor wilfully disclose falsely or withhold or suppress the truth, the creditor may commence an action against him, and recover double the amount of the debt and charges. The intention appears to have been, to afford the creditor the benefit of all claims, which the debtor might have against other persons, or to subject him to an action for making a false disclosure. No action could be maintained against the debtor for the expression of an opinion in his disclosure, without proof that it was at variance with his actual knowledge at the time,

and wilfully expressed. When the debtor discloses accounts or claims to considerable amount against other persons, and states, that they have not been settled, that he does not know the amount of them, or of the counter claims against him, but that he thinks there is nothing due to him, it is obvious that such an opinion is of very little value, and that he could not be proved to be guilty of making a false disclosure, should there appear upon a just settlement to be no trifling sum due to him. To allow him to be excused from having such accounts appraised, and if found to be of any value to be applied to the payment of his debt, would be to permit him to elude the provisions of the statute by the expression of an opinion of no importance, and to preserve for his own use balances due on such accounts, without subjecting himself to an action for making a false disclosure.

When a debtor, in a case like the present, ascertains that he must make a disclosure, and knows that he has unsettled accounts against other persons, he should either have them settled ; take measures to inform himself, that there is nothing due upon them, so that he can state it as a fact, and not as a mere expression of an opinion formed without any competent knowledge ; or should cause them to be appraised according to the provisions of the statute. This does not impose upon him a greater burden or duty, than it was the design of the statute to impose.

In this case the debtor says, that he was unable to state the amount of his account against Hiscock and Metcalf, that it remained unsettled, but he did not think there was any thing due, but thought he owed them. That he was to receive from Hiscock and Stetson $950 for finishing a vessel, as he thinks ; that he has not settled with them, but thinks there is nothing due. No one can fail to perceive, that it would not be surprising, that there should be found to be due to him on the settlement of such an account no trifling sum, or that on the contrary he should be found indebted to them. While it is perceived, that such may be the fact, it must be regarded as an account in the sense in which that term is used in the stat-

ute; and the debtor should have pursued the course pointed out, or have caused these accounts to be appraised.

In the disclosure made in performance of the condition of the bond bearing date on December 27, 1845, the debtor names several debts due to him. From the certificate of the justices it appears, that these were accepted by the creditors in part satisfaction of their debt.

The debtor states, that as the agent of his mother-in-law, Sarah Small, he procured the materials and labor and superintended the erection of a dwellinghouse, which he has since partly occupied as her tenant. In answer to the 34th interrogatory he says, "I have paid out, I suppose, about $1800 for materials, work, &c.;" and in answer to the 36th, he desires $1700 to be substituted for $1800. In answer to the 29th he says, that he gave his own note to Jacob Knights for about $20, which remains unpaid, unless Mrs. Small has paid the same. It does not appear that she had paid it, or that it constituted any part of the sum of $1700. He states, that he commenced the building in the fall of 1843, and finished it in the winter of 1844. In answer to the 51st interrogatory he says, "I have superintended the building of houses and other buildings in the same manner for other persons, expecting to be paid a fair compensation. I consider that I owe Mrs. Small."

In answer to the 36th, having previously stated it to be about $1600, he states the amount advanced by Mrs. Small to him to pay on account of the house, to be $1508,60. He also says, he owed her a note of $120, and for rent of that part of the house occupied by him for about sixteen months $140; and that the amount by him advanced beyond the amount received, was by agreement to be applied to the payment of that note and the rent. It had not been so applied.

According to his statement her claim against him would then be : —

| | |
|---|---:|
| For money advanced on account of the house | $1508,60 |
| For note due from him to her | 120,00 |
| For rent of house 16 months | 140,00 |
| | $1768,60 |

And his claims against her : —

| | |
|---|---:|
| For cash paid on account of house | $ 1700,00 |
| For note given to Knights or paid him | 20,00 |
| | $ 1720,00 |

Leaving a balance due to her of          $48,60

But he had a further claim against her for procuring the materials and labor and for superintending the building of the house, as yet unascertained and unadjusted. It would seem to be highly probable, that a reasonable compensation for these services would leave a balance then due from Mrs. Small to him, although he says, that he considered that he was indebted to her.

Such claims on his part, arising out of materials and labor procured and services performed without any written contract, must necessarily be exhibited and proved as an account or in the nature of an account. If this were not so, he might have obtained the benefit of the oath and of a discharge, while he retained, what might prove to be a valuable claim. The observations already made respecting the course to have been pursued and upon the effect of an opinion of the debtor, are alike applicable to this as to those accounts.

The testimony of John Glidden and Sarah Small cannot be legally admitted in this case. The question does not now arise, whether the debtor could have made such answers and proof before the magistrates, as would have entitled him to take the oath and be discharged, but whether he was entitled to that benefit upon the evidence presented before them. If he was not then legally entitled to take the oaths, the bonds became forfeited. Testimony now offered could not prevent such a result.

Nor can the action pending against the debtor, alleging that he made wilfully false disclosures, affect the rights of the parties in this suit.

Since the case has been argued and continued under advisement, the Legislature, on August 11, 1848, passed an act to take effect upon its approval, providing, that in all actions

commenced or to be commenced on bonds of this description, if it shall appear, that the debtor had taken the oath prescribed by the statute before breach of his bond, the damages shall be assessed by the jury, if such be the request of either party, and if no such request be made, then by the Court; and that the amount assessed shall be the real and actual damages and no more. This action still pending comes within the provisions of that act. The parties have had no opportunity to make their election to have the damages assessed by a jury; but their agreed statement contains a clause providing, that if the defendants have a right to have the damages assessed by a jury the action is to stand for trial. Having such a right by virtue of the recent act, the action is to stand for trial to assess the damages.